IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| ROCKY MOHAMMAD MOHSEN, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:11-CV-0028 |
| | § | |
| WILLIAM STEPHENS, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## REPORT AND RECOMMENDATION
## TO DENY PETITION FOR A WRIT OF HABEAS CORPUS

Came for consideration the Petition for a Writ of Habeas Corpus by a Person in State

Custody filed by petitioner ROCKY MOHAMMAD MOHSEN.  For the reasons set forth below,

it is the opinion of the undersigned United States Magistrate Judge that petitioner's habeas

application should be DENIED.

I.
## FACTUAL AND PROCEDURAL HISTORY

In January and February 2008, law enforcement received information of "a lot of possible

drug activity" going on at a house at 1214 Amherst in Perryton, Texas.  Vol. II at 9, 39

("Reporter's Record").  On February 29, 2008, law enforcement observed David Eslin make a

short visit to the Amherst house.  Vol. II at 11.  After he left the residence, police stopped Eslin for

a traffic violation.  Upon receiving Eslin's consent to search, the officer found methamphetamine

hidden between the seats of the vehicle and arrested Eslin for possession of a controlled substance.

At the police station, Eslin advised the officers he had purchased the $50 piece of

methamphetamine at the Amherst residence from a man named "Rocky," who resembled the actor

Sylvester Stallone.  Vol. II at 13.  Eslin indicated he believed the owner of the home was Irma

Qusini.  Vol. II at 48, 73.

Later that night, law enforcement officers executed a search warrant at the Amherst

address revealing:

1.  In the master bedroom:

   A.  petitioner, who identified himself as "Rocky," and Irma Qusini, who acknowledged there was probably $100 worth of narcotics in the house;

   B.  on the west night stand:  a cell phone with a face screen which read "Irma and Rocky"; and a closed pill bottle containing .31 grams of methamphetamine;

   C.  on the east night stand:  a marijuana cigarette in an ash tray;

   D.  on top of an end table:  petitioner's billfold containing his identification and money; a box containing three (3) baggies of marijuana, rolling papers, and a lighter; and a baggy of .74 grams of methamphetamine;

   E.  under the end table: a black box top containing loose marijuana, a pair of scissors, and a card; a black box with marijuana and plastic baggies with white residue;

   F.  in the bed covers:  a black zippered bag containing smaller bags of 3.64 grams of cocaine, cumulatively; a larger bag of 4.93 grams of cocaine; a bag of 11.51 grams of methamphetamine; a bag of 5.43 grams of methamphetamine; and money;

   G.  in a jewelry cabinet, a baggy of marijuana;

   H.  a methamphetamine pipe and marijuana roach underneath the bed; and

   I.  two (2) items of men's clothing.

2.      In the southwest bedroom:

    A.      Dulces Baca, Qusini's daughter; Alisha Meek, Baca's girlfriend; and Michael Noland;

    B.      an assault rifle and a shotgun; and

    C.      digital scales with residue and a baggie with .44 grams of methamphetamine on a dresser; a baggie with .47 grams of methamphetamine on the bed; .02 grams of cocaine; and other drug use paraphenalia.

3.      In a third bedroom that did not appear to be being used due to items (a roll of carpet) being stored on the bed:

    A.      in the closet, in a hanging garment bag and in a toiletry kit, petitioner's passport, Visa debit card and $4,300 cash.

4.      In a utility room adjacent to the master bedroom:

    A.      in a black suitcase containing men's items, a roll of plastic baggies typically used in the distribution of narcotics, and a red wallet with $50 cash and an August 23, 2007 bank deposit receipt for $101,482 to Cathay Bank.

5.      In the kitchen bar area:

    A.      a scanner to "pick up cell phone conversations as well as monitor fire and EMS traffic."

All occupants of the house were arrested on possession of controlled substance charges.

On April 28, 2008, petitioner was charged in the 84th Judicial District Court of Ochiltree County, Texas, by indictment with the first degree felony offense of possession with the intent to deliver a controlled substance (methamphetamine in an amount of 4 grams or more but less than 200 grams), in violation of Texas Health & Safety Code § 481.112(a), (d).  *State v. Mohsen*, No. 4337.  The indictment also alleged, for purposes of sentence enhancement, that the offense was committed in a drug free zone under section 481.134(c) of the Texas Health & Safety Code which increases the minimum term of imprisonment by five (5) years.  The indictment further alleged

that on October 16, 2002, prior to the commission of the alleged offense, petitioner had been convicted of the felony offense of possession of a controlled substance in Cook County, Illinois which, if found true, would increase petitioner's minimum sentence to fifteen (15) years.

Petitioner was initially released on bond after his arrest, but voluntarily surrendered to authorities when his bond was increased after indictment. On May 29, 2008, petitioner was provided appointed counsel.

On February 10, 2009, counsel filed a Motion for Change of Venue on the basis that petitioner could not receive a fair trial in Ochiltree County due to his race. Counsel, however, did not support the motion with petitioner's "affidavit and the affidavits of at least two credible persons" as required by article 31.03 of the Texas Code of Criminal Procedure. The motion was never heard or ruled upon by the state trial court.

On April 8, 2009, new counsel, David Holmes, was appointed to represent petitioner. On May 18, 2009, jury trial in petitioner's case began.[1] At trial, the state presented four (4) law enforcement officers who testified to their observance of the Amherst residence for drug sales activity, the arrest of Eslin and his statements given upon arrest, the execution of the search warrant at the Amherst residence, the collection of evidence, the identification of petitioner as one of the individuals found at the residence, and the indication on petitioner's passport found in the residence showing that petitioner was in the country of Qatar on January 5, 2008 and January 30, 2008.

---

[1] On July 7, 2008, prior to petitioner's trial, David Eslin pled guilty to the offense of possession of a controlled substance in an amount less than 1 gram and received a probated sentence of three (3) years and a $1,000 fine, and Dulces Baca pled guilty to the offense of possession of a controlled substance in an amount less than 4 grams and received a probated sentence of eight (8) years and a $3,600 fine. On July 14, 2008, Alisha Meek pled guilty to the offense of possession of a controlled substance in an amount less than 4 grams, but adjudication was deferred and she was placed on probation for six (6) years, and a fine of $2,400 was assessed.

David Eslin testified that on February 29, 2008, he purchased $50 worth of methamphetamine from petitioner.  Vol. III at 33-34.  Eslin acknowledged he had known Irma Qusini maybe six (6) months prior to the day he was arrested, having previously bought methamphetamine from her at the Amherst address maybe 10-12 times between September 2007 and February 2008.  Vol. III at 43-44.  Eslin testified he had met petitioner "probably five or six weeks" before his February 29, 2008 arrest date, and had probably purchased methamphetamine from petitioner maybe 8-10 times during this time period.  Vol. III at 44, 51, 59.  Eslin also testified he had violated the probated sentence he received for his related narcotics possession conviction and was currently in jail.

Alisha Meek testified petitioner had been staying at the house on Amherst for about a month prior to his arrest on February 29, 2008.  Meek testified petitioner and Irma Qusini had a romantic relationship and shared the bed in the master bedroom.  Vol. III at 78.  Meek testified petitioner met Eslin at the door that evening, while she and two others were in the southwest bedroom.  Meek identified Irma Qusini as the leader of the drug-selling operation, but confirmed that petitioner participated during the short time he lived at the house.  Vol. III at 96-97.

Dulces Baca estimated that petitioner had lived at the house on Amherst for about two (2) weeks prior to his arrest and shared the master bedroom with her mother, Irma Qusini.  Vol. III at 118, 126.  Baca explained the master bedroom did not have a closet so petitioner kept his clothing in the closet in the middle bedroom, which was being used for storage, and her mother kept her clothing in the utility room.  Vol. III at 123, 126.  Baca testified that on February 29, 2008, Eslin came to the house and petitioner answered the door.  Vol. III at 117.  Baca stated she had only seen Eslin at her home one other time and had not seen petitioner speak with Eslin prior to that

night.  Vol. III at 117, 121.  Baca testified she and Noland were using the methamphetamine found in her room on February 29, 2008, that she had gotten those drugs out of the bag found on her mother's bed, and that the bag of drugs belonged to her mother and petitioner.  Vol. III at 120, 131.  Baca stated the shotgun found in her room belonged to Eslin and the rifle belonged to another individual, Collin Armstrong.  Vol. III at 106-07.  Baca acknowledged she and her mother, Qusini, fled to Florida after they were indicted.  Baca testified she pled guilty to possessing the controlled substances and firearms found in her room in exchange for an 8-year probated sentence.  Vol. III at 111-12.

Irma Qusini was called to testify at trial but declined to do so, asserting her constitutional and statutory rights against self incrimination.  Petitioner MOHSEN did not testify.

On May 20, 2009, a jury convicted petitioner of the possession with intent to deliver offense charged in the indictment, and found the offense was committed within a drug free zone as defined by Texas Health & Safety Code § 481.134(c), thereby increasing the minimum term of imprisonment by five (5) years.

On May 27, 2009, the trial court held a sentencing hearing at which petitioner pled true to the enhancement paragraph of a prior felony offense and testified in his defense.  The state trial court ultimately charged the jury that if it found petitioner had committed the felony offense alleged as the enhancement of the indictment prior to the commission of the current offense, his minimum term of confinement was 20 years, but that if the jury did not so find, petitioner's minimum term of confinement was 10 years.  The jury found the enhancement paragraph alleging the prior commission of a felony to be true, and assessed petitioner's punishment at twenty (20) years imprisonment, the stated minimum sentence.  In the Judgment, sentence was ordered to

commence on May 27, 2009, with time credited from May 20, 2008 to May 27, 2009.[2]

On May 27, 2009, petitioner filed a motion for new trial and motion in arrest of judgment (not included in the record before this court), as well as a notice of appeal.

On July 12, 2009, co-defense counsel Curt Brancheau corresponded with petitioner advising he was working on petitioner's appeal, that the "appeal [was] going well," and that he had just received the record so that he could "start the real nuts and bolts work on [petitioner's] appeal." SHCR at 62. Defense counsel indicated possible grounds of error would be that "the law behind the probable cause affidavit produced by the arresting officer wasn't correctly applied by the trial court," "that the change of venue denial was improper," and that there was "improper testimony or evidence admissions at trial." Brancheau also appeared to indicate petitioner's case could possibly be handled by an advocacy group on petition for discretionary review because Eslin was the only witness that testified petitioner delivered drugs and that without his testimony (Brancheau indicated he would attempt to get Eslin to recant his testimony), petitioner would only be guilty of possession, thereby potentially reducing his sentence.

At some point thereafter, prosecutor Scott determined the drug zone enhancement was improper and, consequently, the trial court's instruction to the jury regarding the minimum sentence to which petitioner could be sentenced was in error. Specifically, the minimum sentence should have been fifteen (15) years[3] instead of twenty (20) years because the house at 1214 Amherst, while within 1000 feet of a *playground*, was not within 1000 feet of a school or youth

---

[2]Judgment was signed and entered on June 1, 2009.

[3]Petitioner was subject to a minimum 5-year sentence for a first degree felony under 481.112(d) of the Texas Health and Safety Code, however, the repeat offender enhancement under section 12.42(c)(1) of the Texas Penal Code increased petitioner's minimum sentence to 15-years).

center so as to be subject to the 5-year enhancement of the minimum sentence under section

481.134(c) of the Texas Health and Safety Code.

On July 18, 2009, co-defense counsel Brancheau advised petitioner, in correspondence:

I just got some interesting news over the phone and wanted you to know as soon as possible. David [Holmes] will be calling you this week with the details but, essentially, David Scott wants to make a deal with you. If you will testify against Irma when she goes to trial next month, he will <u>drop</u> the school zone finding and reduce your sentence to 15 years. Without the school zone finding, all mandatory, pre-parole eligibility requirements will be dropped.

I personally want David Scott to reduce the sentence to 10 (the minimum without a school zone), but we'll see. You need to also know that David Scott is going to want testimony that you were with her as she sold drugs out of the car [and] out of the house. He wants testimony that you personally participated in dealing with her.

As I said, David is going to try to call you this week with the details but I wanted to give you the heads up.

We are going to ask the judge to issue a "bench warrant" which will bring you back to Perryton. [Most importantly! In order to get this deal for your testimony, you will have to <u>drop</u> <u>your</u> <u>appeal</u>.] Think about what you want to do, and David Holmes will be contacting you soon.

SHCR at 64-65.

According to petitioner, defense counsel Holmes subsequently advised petitioner the State

would move the trial court to reduce petitioner's sentence from 20 years to 15 years in exchange

for petitioner dropping his motion for new trial, waiving his appeal, and providing testimony

against Qusini, and advised petitioner to accept this agreement. It is unclear whether the State or

defense counsel filed a written Motion to Reform the Judgment.

On July 28, 2009, the trial court held a hearing on the motion to reform. Prior to the

hearing, petitioner entered into a written agreement with the State whereby the Judgment would be

reformed to omit the finding on the 5-year enhancement to the minimum sentence under section

481.134(c) of the Texas Health and Safety Code as well as any reference to a drug-free zone, and to impose a 15-year sentence in exchange for petitioner agreeing to withdraw his motion for new trial and waive his appeal.  At the hearing, the state trial court accepted the agreement, and ordered the original Judgment reformed to reflect a 15-year sentence and deleted any finding as to a drug-free zone.  On that date, the trial court entered a new Judgment reflecting petitioner's conviction for possession of a controlled substance with the intent to deliver, enhanced by the prior felony conviction, reducing the offense level to a 2nd degree felony,[4] and reducing petitioner's sentence to fifteen (15) years imprisonment.  Petitioner was again given time credit from May 20, 2008 to May 27, 2009 (the date of the original judgment), however, the new Judgment made no reference to the time period from petitioner's original Judgment of May 27, 2009 to the date of the new Judgment on July 28, 2009.

On May 1, 2010, petitioner's signed an affidavit wherein he averred he corresponded with Qusini on a matchmaking website, and that after she purchased an airline ticket for him, he traveled from Qatar to Amarillo, Texas to meet her on January 31, 2008.  SHCR at 51-55. Petitioner averred Quisini had misrepresented herself and, upon meeting her, requested she take him to a hotel.  Petitioner stated he fell asleep in the car, waking up in Perryton, Texas.  Petitioner stated Qusini took him to a Perryton hotel where he stayed for two weeks while trying to make travel arrangements.  Petitioner averred Qusini promised she would take him to Nebraska where his daughter was attending college and then to San Diego where he had previously lived, but requested he stay in her guestroom until arrangements were made.  Petitioner agreed but denied any type of romantic relationship with Qusini.  Petitioner averred he met Eslin when he came to

---

[4]It appears the judgment should have reflected the offense level was a 1st degree felony.

visit Baca but denied selling him any drugs and avowed he was alone in the guestroom at the time

of the search, without any drugs in the room or on his person.  Petitioner also avowed a drug test

performed upon his arrest came back negative (while the others arrested came back positive) and

that the drugs and paraphernalia found in the house exhibited the others' fingerprints but not his.

After petitioner bonded out, he voluntarily surrendered himself after his bond was raised while

Qusini and Baca fled to Florida.  Petitioner also made averments in support of the grounds he

subsequently raised in his state habeas application.  Petitioner attested that Qusini, as part of her

guilty plea, "admitted that she was the owner and possessor of all the drugs." [5]

On May 20, 2010, petitioner filed a state application for a writ of habeas corpus

challenging his conviction and sentence.  *Ex parte Mohsen*, No. WR-74,278-01.  On September

15, 2010, the Texas Court of Criminal Appeals remanded the case to the state trial court

to provide petitioner's trial and appellate counsel and the prosecuting attorney the opportunity to

respond to petitioner's claims of ineffective assistance of counsel.  The Court also directed the

trial court to make findings of fact as to (1) how many witnesses the State presented at petitioner's

trial, and as to how many of those witnesses were accomplice witnesses; (2) whether the state

presented evidence or testimony to corroborate the testimony of the accomplice witnesses; (3)

whether defense counsel requested an instructed verdict or an instruction on the corroboration

requirement for accomplice witness testimony and, if not, why not; (4) whether there was

contradictory testimony at trial as to how long petitioner had been in the United States and, if so,

whether defense counsel sought to impeach the testimony of the state's witness that he had known

petitioner and had been purchasing drugs from petitioner for 3-6 months; (5) whether defense

---

[5]On July 29, 2009, Irma Qusini was convicted, pursuant to a guilty plea, of possession with intent to distribute a controlled substance in an amount greater than 4 grams but less than 200 grams, and was assessed a 50-year sentence.  *State v. Qusini*, No. 4339.

counsel was in possession of petitioner's plane ticket and, if so, why he did not introduce the

ticket into evidence; (6) whether the motion for change of venue filed by counsel prior to trial was

denied because it did not conform to the requirements of state law; (7) whether petitioner's trial

counsel was, at the time of petitioner's trial, a law partner with the prosecutor who prosecuted

petitioner; (8) whether there was any indication that the jury had been influenced by an outside

party having *ex parte* communications with jurors during trial and, if so, what the nature of the

communications were and whether defense counsel objected or filed a motion for new trial to

introduce evidence of such improper outside influence; (9) whether petitioner's trial counsel was

also appointed to represent him on direct appeal, how petitioner's waiver of appeal and reduction

in sentence came about, and what advice petitioner was given with respect to such agreement; and

(10) whether the performance of petitioner's trial attorney was deficient and, if so, whether

counsel's deficient performance prejudiced petitioner.

On October 6, 2010, the ex-county attorney, Bruce Roberson, filed an affidavit stating:

> I served as Ochiltree County Attorney with felony responsibility for approximately
> Twenty Seven and three-quarters (27 3/4) years until my retirement on December 31,
> 2008.  The indictment of Rocky Mohammad Mohsen occurred during my tenure as
> Ochiltree County Attorney.  Shortly after retirement, I took an extended vacation and
> did not return to Ochiltree County or the State of Texas or the United States of
> America until early or mid April, 2009.  From the last week in April 2009 through the
> end of May 2009 I busied myself with the opening of my practice, attended to the
> cases that came into the office and made a <u>very few</u> appearances at the Ochiltree
> County Courthouse.

> Towards the end of May 2009, I was at the Courthouse on business.  I became aware
> that the trial of Rocky Mohammad Mohsen was taking place in the District Courtroom.
> I stepped into the courtroom and observed for Fifteen (15) or Twenty (20) minutes,
> became bored with the proceedings, left the courtroom, and shortly thereafter the
> Courthouse.  I do not recall that I spoke with any of the trial participants.  It is my
> earnest belief that I did not return to the courtroom during the trial.  I did not have
> contact with any of the trial participants and I unequivocally and unambiguously deny
> that I had contact with any member of the jury.  I did not "met [SIC] with the jury
> during a break".  I did not "influence the jury".  I made no "requests to convict"

[petitioner].  Statements by [petitioner] which suggest such conduct on my part are total fabrications and completely untrue.

On December 9, 2010, petitioner's trial counsel, David Holmes, filed an affidavit stating:

Prior to January 1, 2009 I was a law partner with David Scott, who later became the Ochiltree County Attorney.  That partnership was dissolved completely prior to David Scott taking office as Ochiltree County Attorney on January 1, 2009.  There was no partnership of any kind whatsoever between me and David Scott after December 31, 2008.  I had no interaction with David Scott regarding this case whatsoever until I was appointed counsel for the [petitioner] in the spring of 2009.

I was not made aware of any alleged *ex parte* communications by David Scott and/or Bruce Roberson with members of the jury at the time of trial and only became aware of this allegation when the [petitioner] filed his Habeas Corpus Application.

After I had been appointed as counsel for the [petitioner] I became aware that the [petitioner's] prior counsel had filed a motion to transfer venue on his behalf.  After reviewing the legal standards for prosecuting a successful motion to transfer venue and applying them to the facts of the case as I knew them to be, I was of the opinion that pursuing a motion to transfer venue was without a legal or factual basis, would be a waste of time and frivolous.  This is particularly true given that the [petitioner] had been in the county for a very short period of time, therefore the possibility that a conspiracy against him instigated by influential persons was extremely remote.  The decision was therefore made not to pursue the motion to transfer venue.

As to the issue of impeaching accomplice testimony, testimony was given by a prosecution witness regarding the [petitioner's] passport that indicated the [petitioner] was out of the country in Qatar during January, 2008.  Additionally, evidence was given by a defense witness that the [petitioner] had only been at the house in question for a couple of weeks.  David Eslin, the accomplice in question, also testified that he had only been buying drugs from the [petitioner] for 5 or 6 weeks.  The airline ticket in question was in my possession at the time of trial.  It was not introduced into evidence because other evidence (passport evidence, testimony of witness) already established the fact that the [petitioner] had only been in the country for a short period of time.  The airline ticket would have been cumulative evidence.  Additionally, the airline ticket was hearsay, without a sponsoring witness.  The sponsoring witness would have to have been the [petitioner], who chose not to testify during the guilt/innocence phase of the trial.  Without the [petitioner's] testimony the airline ticket was inadmissible as evidence.

An instructed verdict was not requested due to the fact that the evidence at trial, even disregarding the accomplice testimony, was more than enough to survive a directed verdict challenge.  A request for a directed verdict would have been

pointless and caused needless delay in the trial.  An instruction as to accomplice testimony was not requested as it was not deemed necessary given the overwhelming evidence in the case that did not depend on corroborating testimony and given the fact that the arrest of the [petitioner] had nothing to do with corroborating testimony and everything to do with the fact the [petitioner] was found in a house in which illegal drugs were also found.

After the jury convicted the [petitioner] I became aware through a conversation with the Ochiltree County Attorney, that the instruction to the jury that the minimum sentence of 20 years was wrong.  The actual minimum under the facts of this case should have been 15 years.  Because the error did not affect the guilt/innocence aspects of the case, I contacted [petitioner] and informed him of the error and proposed that in exchange for the [petitioner] waiving his rights to file a motion for new trial and waiving his right to appeal, that he agree to reform the judgment and accept a sentence of 15 years.  Prior to the hearing on the motion to reform judgment, I discussed all the options with the [petitioner], including the possibility of filing a motion for new trial and appealing the case.  After explaining the options to the [petitioner] and the various pros and cons of each option, a hearing was held on the motion to reform judgment on July 28, 2009 at which time the [petitioner] agreed, in open court, to waive his rights to file a motion for new trial and waive his right to appeal and agreed to the minimum 15 year sentence.

SHCR at 132-33.

On December 9, 2010, the prosecuting attorney in petitioner's trial, David Scott, filed an

affidavit stating:

I presently serve as Ochiltree County Attorney with felony responsibility.  I have served in this position since January 1, 2009.  I was the prosecuting attorney in Cause No. 4337, "State of Texas v. Rocky Mohammad Mohsen" beginning on January 1, 2009 and was the prosecuting attorney at the trial of that case.

Prior to my taking office as Ochiltree County Attorney I was a law partner with David Holmes who was [petitioner's] trial counsel.  That partnership was dissolved completely prior to my taking office as Ochiltree County Attorney on January 1, 2009. There was no partnership of any kind whatsoever between me and David Holmes after December 31, 2008.  David Holmes was appointed as counsel for [petitioner] sometime in the spring of 2009, well after our partnership was dissolved and after I had taken over as Ochiltree County Attorney.

I had no *ex parte* communications with any juror whatsoever during the trial of this cause.  I did not in any way attempt to improperly influence any member of the jury.

After the jury convicted the [petitioner] I became aware through a conversation with

the Ochiltree County Attorney, that the instruction to the jury that the minimum sentence of 20 years was wrong.  The actual minimum under the facts of this case should have been 15 years.  This is because the house in question was within 1000 feet of a playground and not a school.  Therefore the punishment could only be enhanced to a first degree felony (which it already was) instead of being enhanced by adding 5 years to the minimum term of confinement under Tex. H&SC Sec. 481.134(c).  I contacted [petitioner's] trial counsel, David Holmes, and informed him of the error and proposed that, because the error had no effect on the guilt/innocence aspects of the trial, that in exchange for the [petitioner] waiving his rights to file a motion for new trial and waiving his right to appeal, that we agree to reform the judgment and sentence the [petitioner] to the minimum of 15 years.  A hearing was held on the motion to reform judgment on July 28, 2009 at which time the [petitioner] agreed, in open court, to waive his rights to file a motion for new trial and waive his right to appeal and agreed to the 15 year sentence.

SHCR at 134-35.

On December 13, 2010, the state trial court made findings of fact and conclusions of law based on petitioner's state habeas application, official court documents and records, trial exhibits, the reporter's record, affidavits, and the trial court's personal experience and knowledge.  SHCR at 136-44.  In its written findings, the state trial court addressed the issues of (1) witnesses presented by the state; (2) petitioner's time in the United States; (3) petitioner's motion to transfer venue; (4) the partnership of petitioner's trial counsel and the prosecutor; (5) purported *ex parte* communications with the jury; (6) petitioner's waiver of appeal; and (7) defense counsel's performance, concluded no error justified state habeas corpus relief, and recommended all of petitioner's grounds for relief be denied.

On January 26, 2011, the Texas Court of Criminal Appeals held:

We agree with the trial court's findings of fact, conclusions of law and recommendation with respect to [petitioner's] grounds raising substantive challenges to the merits of his conviction.  However, [petitioner] also raised a claim that he was being improperly denied credit for pre-sentencing jail time credit.  Although it appears that [petitioner] has filed a motion for judgment *nunc pro tunc* in the trial court, if the trial court fails to respond [petitioner] is first required to seek relief in the court of appeals by way of a petition for a writ of mandamus unless there is a compelling reason not to do so.  We therefore deny relief with respect to [petitioner's] first

through seventh and ninth grounds for review.  [Petitioner's] eight ground is dismissed
pursuant to *Ex parte Ybarra*.

*Ex parte Mohsen*, App. No. 74,278-01 (citations omitted).  On that same date, the Texas Court of

Criminal Appeals denied and dismissed petitioner's state habeas application with written order.

On March 24, 2011, the state trial court entered an Order on petitioner's motion for nunc

pro tunc relief.  In that Order, petitioner was allowed jail credit from February 29, 2008 - March 2,

2008, and from May 20, 2008 - May 27, 2009.  *See Answer, Exhibit A.*

Petitioner filed his federal habeas application with this Court raising the same grounds

raised in his state habeas petition and determined by the state courts.  Respondent has filed an

answer [hereinafter cited as *Answer*] arguing petitioner's claims are without merit.  Petitioner has

filed a reply brief to respondent's briefs, accompanied by affidavits.


II.
PETITIONER'S ALLEGATIONS

In his federal habeas application, petitioner contends he was denied a fair trial and due

process because:

1.      He was convicted solely upon uncorroborated testimony of accomplice
        witnesses;

2.      The State committed prosecutorial misconduct, tainted the jury and
        tampered with the jury;

3.      The State knowingly used perjured testimony of a co-defendant;

4.      Petitioner's conviction was obtained through the use of evidence seized
        through an unlawful search and seizure;

5.      Petitioner was denied a change of venue;

6.      Petitioner's sentence was enhanced illegally in that the trial court
        erroneously instructed the jury as to petitioner's minimum sentence;

7.      Petitioner was denied effective assistance of trial counsel because counsel:

      A.      Labored under a conflict of interest;

      B.      Failed to introduce evidence which would have rebutted a witness' testimony;

      C.      Failed to request an instructed verdict;

      D.      Failed to file a motion for new trial based on ex parte communications with the jury;

      E.      Failed to challenge the erroneous enhancement;

      F.      Wrongfully advised petitioner to waive his appeal; and

      G.      Failed to file a motion for new trial after an accomplice admitted she was the sole owner of all the drugs seized.

8.      Petitioner is being denied presentence jail time credits; and

9.      The State wrongfully forfeited $4,800.00 seized from petitioner.


III.

<u>MERITS</u>

In his answer, respondent fully and accurately sets out the appropriate standard under the AEDPA for reviewing a state court adjudication on the merits, and the appropriate burden of proof on petitioner. *Answer*, at 11-14. These standards are applicable to this case and to prevail petitioner must show the state court adjudication of the claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding."

A.  Uncorroborated Testimony of Accomplice Witnesses

At the time of petitioner's trial, article 38.14 of the Texas Code of Criminal Procedure

provided:

> A conviction cannot be had upon the testimony of an accomplice unless corroborated
> by other evidence tending to connect the defendant with the offense committed; and
> the corroboration is not sufficient if it merely shows the commission of the offense.

By his first ground, petitioner argued he was convicted solely upon the testimony of accomplices

(Eslin, Baca and Meek) without any corroborating evidence, in violation of article 38.14 of the

Texas Code of Criminal Procedure.  Petitioner contends he was thus "denied a state-created right,

a fair trial and due process of law" as guaranteed by the 5th Amendment.

Respondent's answer to this claim is on point.  *See Answer* at 14-15.  By this ground,

although couched in constitutional terms, petitioner is arguing a violation of state law.  To be

entitled to federal habeas corpus relief, petitioner must first show that his state court proceedings

involved a "violation of the Constitution or laws or treaties *of the United States*."  28 U.S.C. §

2254(a) (emphasis added).  Consequently, federal courts review state court proceedings for

violations of federal law not state law, and the state law requirement that accomplice testimony be

corroborated has "no independent constitutional footing."  Violation of this rule, or the state

court's failure to enforce the rule, simply does not warrant constitutional attention.

Secondly, petitioner's conviction was not based only on accomplice testimony.  To the

contrary, petitioner was charged with *possession* with intent to deliver over 4 grams but less than

200 grams of methamphetamine.  He was not charged with *delivery* of a controlled substance to

David Eslin.  The amount of methamphetamine found at the Amherst address was well over 4

grams and appears to have been closer to 20 grams.  There was sufficient evidence that petitioner

jointly possessed the required amount of methamphetamine to prove the commission of the

offense.

Lastly, during the state habeas proceedings, the trial court made extensive findings of fact and conclusions of law regarding this claim which were adopted by the Texas Court of Criminal Appeals.  Petitioner has failed to show the state courts' adjudication of this claim was based upon an unreasonable determination of the facts, or was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.  Petitioner has not rebutted the state courts' findings that his claims are without merit, or shown that the state courts' determinations were objectively unreasonable.  Petitioner's first ground should be DENIED.

## B.  Prosecutorial Misconduct

By his second ground, petitioner alleges prosecutor Scott and former county attorney Roberson contacted the jury *ex parte* and "persuaded them to convict Petitioner."  In an affidavit submitted with his state habeas application, petitioner averred "Ex-Prosecutor Bruce Roberson approached the jury outside [the] courtroom during my trial and influenced them to convict me in [defense counsel's] very presence."  SHCR at 54.  In an affidavit submitted with his reply in this proceeding, petitioner avers:

> On May 20th, the day of closing argument . . . I saw my court appointed lawyer Mr. David Holmes walking into the courtroom from the Judge's chamber[s].  Right next to the jury room, David Holmes told Mr. Curtis Brancheau that they are talking to the jurors.  Brancheau replied, who?  Holmes replied Scott and Roberson, but don't worry about it, I got it, I know what to do.

[Document 28-1 at 20].  Petitioner states that Robertson, just prior to the jury's verdict, walked into the courtroom, addressed petitioner, and then left, his only appearance during the trial.

Petitioner contends he has shown "outside influence upon the jury," resulting in the denial of a fair

trial and due process.

Respondent initially argues petitioner has not substantiated his allegation and that the claim is conclusory and should be denied. The Court agrees petitioner has not substantiated his allegation with anything other than his statements. Additionally, in his affidavit, defense counsel Holmes states:

> I was not made aware of any alleged *ex parte* communications by David Scott and/or Bruce Roberson with members of the jury at the time of trial and only became aware of this allegation when [petitioner] filed his Habeas Corpus Application.

Petitioner's affidavit as to a purported statement made by defense counsel Holmes is disputed by Holmes's affidavit. Petitioner's claim of *ex parte* communications is unsupported by any independent evidence.

Moreover, during the state habeas proceeding, the state trial court judge found, based on the affidavits of prosecutor Scott and Mr. Roberson, that there was no evidence of any outside party having *ex parte* communications with the jurors during trial. The state court further found neither defense counsel Holmes nor the court were made aware of any alleged *ex parte* communications with the jury. The Texas Court of Criminal Appeals adopted the finding of the state trial court and denied relief. Petitioner has failed to show the state court adjudications denying relief were based on an unreasonable determination of the facts in light of the evidence. Petitioner has not rebutted the state courts' findings that his claim is without merit, or shown the state court's determinations were objectively unreasonable. Petitioner's second ground should be DENIED.

### C.  Knowing Use of Perjured Testimony

During trial, defense counsel, through the testimony of the officer who found petitioner's

passport during the search of the house, pointed out that petitioner's passport reflected entry into the country of Qatar from the country of Oman on January 5, 2008, and entry into the country of Qatar on January 30, 2008.  Vol. III at 28-29.

David Eslin testified at trial that he had known Irma Qusini maybe six (6) months prior to the day he was arrested, having previously bought methamphetamine from her at that address maybe 10-12 times.  Vol. III at 43-44.  Eslin testified he met petitioner "probably five or six weeks" before his (Eslin's) February 29, 2008 arrest date, and had probably purchased methamphetamine from petitioner 8-10 times.  Vol. III at 44, 51, 59.

By his third ground, petitioner argues the State knowingly used perjured testimony from Eslin to obtain petitioner's conviction, thereby denying petitioner a fair trial.  Petitioner alleges Eslin falsely testified "that he knew and bought drugs from the Petitioner for 3-6 months when Petitioner had only been in the country for a few weeks."  The trial transcript, however, reflects Eslin did <u>not</u> testify he had known petitioner 3-6 months, rather, Eslin indicated he had known Qusini for that period of time and had only met petitioner 5-6 weeks prior to his arrest. Petitioner's claim of perjury is without merit.

To the extent petitioner complains Eslin's testimony that he met petitioner 5-6 weeks prior to his arrest was perjurious and should have been corrected by the prosecution, the Court notes such testimony was rebutted, in front of the jury, by the introduction of petitioner's passport which reflected petitioner had only been in the United States for four (4) weeks.  The state had no additional duty to correct Eslin's testimony.  Even so, in closing argument, the prosecutor twice referenced petitioner only being in the house for "three weeks," but noting the evidence showed petitioner knew the drugs were there and assisted Qusini in distributing the drugs, thereby making him guilty of the charged offense.  Vol. III at 13.  Petitioner's claim that perjured testimony was

left uncorrected is without merit.

In addition, the Texas Court of Criminal Appeals denied relief as to this claim, and petitioner has failed to show the state court's adjudication was based upon an unreasonable determination of the facts, or was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.  Petitioner has not rebutted the state court's finding that his claim was without merit, nor shown the state court's determination was objectively unreasonable.  Petitioner's third ground should be DENIED.

### D.   Unconstitutional Search and Seizure

By his fourth ground, petitioner contends he was subjected to an unconstitutional search and seizure because the statement of David Eslin, which formed the basis of the affidavit for the search warrant of the house on Amherst, was unreliable.  Petitioner's illegal search and seizure claim is barred from federal habeas corpus review by *Stone v. Powell*, 428 U.S. 465, 494, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).  Federal courts do not review a state court's application of Fourth Amendment principles in habeas corpus proceedings unless the petitioner was denied a full and fair opportunity to litigate his claims in state court.  *Id*.  Here, petitioner had an opportunity to present this claim prior to trial and at trial.  He also presented this claim in his state habeas corpus petition which was denied by the state's highest court.  Petitioner had a full and fair opportunity to litigate this claim in the state courts.  Petitioner's fourth ground should be DENIED.

### E.   Change of Venue

Petitioner argues the state trial court erred in denying his motion for a change of venue under various provisions of state law.  This claim involves only an allegation of a violation state law and, as such, is not cognizable on federal habeas corpus review.  *Cf. Cook v. Morrill*, 783 F.2d

593, 595-96 (5th Cir. 1986) (construction of state statute regarding procedure for changing venue raised only state law issues not reviewable in federal habeas corpus proceeding).  In addition, the state habeas trial court made findings of fact and conclusions of law and found petitioner's claim of state law error in failing to grant a change of venue was without merit.  These findings and conclusions were adopted by the Texas Court of Criminal Appeals.  Petitioner has failed to show the state courts' adjudication of his claim on the merits was contrary to, or involved an unreasonable application of, Supreme Court precedent, or that the courts' determination was based on an unreasonable determination of the facts.  Petitioner's fifth ground should be DENIED.

## F.  Illegal Enhancement/ Erroneous Instruction

By his sixth ground, petitioner contends his "sentence was illegally enhanced," noting "the trial court erroneously instructed the jury that the minimum they could give Petitioner was 20 years when, in fact, Petitioner's minimum was only 10 years."  Petitioner contends the illegal enhancement/erroneous instruction violated his "right against cruel and unusual punishment and to due process of law."

Petitioner was indicted for possession with intent to deliver a controlled substance, methamphetamine, in an amount greater than 4 grams but less than 200 grams, a first degree felony punishable by imprisonment for a term of 5 to 99 years, or life.  *See* Texas Health and Safety Code, § 481.112 (a), (d) (2008); Texas Penal Code § 12.32(a) (2008).  The indictment also alleged petitioner committed the offense in a drug free zone (within 1,000 feet of a playground). The parties and the trial court were under the mistaken impression that such a finding would increase petitioner's minimum term of confinement for the offense by five years to ten years.  *See* Texas Health and Safety Code § 481.134 (c) (2008).  The statute in effect when petitioner

committed the offense, however, did not treat a playground as a drug free zone under that section and therefore did not allow a 5-year increase for offenses committed within 1,000 feet of a playground.  The indictment, though, had a second enhancement paragraph alleging that prior to committing the primary offense, petitioner had been convicted of a prior felony offense.  If the jury found this enhancement paragraph to be true, under Texas Penal Code § 12.42(c)(1) (2008), petitioner was to be punished by imprisonment for a term of 15 to 99 years or life as he was charged with a first-degree felony and had once before been convicted of a felony.  Since the first enhancement paragraph increasing the minimum term of confinement by five years was invalid, petitioner's actual minimum sentence was 15 years.  The trial court, based upon the drug free zone enhancement, erroneously charged the jury that petitioner's punishment range was a minimum of 20 years to a maximum of 99 years or life.[6]

The jury returned a sentence of 20 years, the minimum sentence they could assess according to the jury charge.  That sentence, however, was subsequently reformed to a 15-year sentence, the actual minimum sentence without a drug free zone enhancement.  This Court finds that although the state trial court erroneously charged the jury as to the minimum sentence under state law, the error was corrected by the reformed judgment and 15-year sentence.  Fifteen years was the minimum sentence petitioner could receive and was not illegally enhanced.  No violations of petitioner's "right against cruel and unusual punishment and to due process of law" were committed.  Petitioner's sixth ground should be DENIED.

## G.  Ineffective Assistance of Counsel

In order to obtain habeas corpus relief on the ground of ineffective assistance of counsel, a

---

[6]The State prosecutor acknowledged the trial court's "instruction to the jury that the minimum sentence was 20 years was wrong."  SHCR at 12-13.

petitioner must demonstrate not only that his counsel's performance was deficient, but must also show the deficient performance prejudiced his defense.  *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).  To demonstrate deficiency, the petitioner must show counsel's actions "fell below an objective standard of reasonableness."  *Id*. at 668, 104 S.Ct. at 2064.  A strong presumption exists "that trial counsel rendered adequate assistance and that the challenged conduct was reasoned trial strategy."  *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992) (citing *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066).  Strategic choices made after a thorough investigation of both the law and facts are "virtually unchallengeable."  *Strickland*, 466 U.S. at 690-91.  To demonstrate prejudice, a petitioner must show a "reasonable probability" exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.  This is a heavy burden which requires a "substantial," and not just a "conceivable," likelihood of a different result.  *Harrington v. Richter*, 562 U.S.__, 131 S.Ct. 770, 787, 178 L.Ed.2d 624 (2011); *see also Cullen v. Pinholster*, 563 U.S.___, 131 S.Ct. 1388, 1403, 179 L.Ed.2d 557 (2011).  If a petitioner fails to show either the deficiency or prejudice prong of the *Strickland* test, then the Court need not consider the other prong.  *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069.

When a state prisoner asks a federal court to set aside a conviction or sentence due to ineffective assistance of counsel, the federal court is required to use the "doubly deferential" standard of review that credits any reasonable state court finding of fact or conclusion of law, and presumes defense counsel's performance fell within the bounds of reasonableness.  *Burt v. Titlow,* __ U.S.___, 134 S.Ct. 10, 2013 WL 5904117 (Nov. 5, 2013).  The absence of evidence cannot overcome the "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance" and cannot establish that performance was deficient.  *Id*.

### 1. Conflict of Interest

Petitioner argues defense counsel Holmes was deficient because he labored under a conflict of interest.  Specifically, petitioner claims Holmes and prosecutor Scott "were business partners and had a law firm together."  Both defense counsel Holmes and prosecutor Scott filed affidavits in the state habeas proceeding averring their partnership was dissolved on or before December 31, 2008, prior to defense counsel Holmes being appointed as petitioner's counsel on or about April 8, 2009.  The state habeas trial court made a fact finding that Holmes was not a law partner with Scott at the time of petitioner's trial which began May 18, 2009, and concluded defense counsel Holmes' performance was not "deficient in any way."  SHCR at 18, 21.  The Texas Court of Criminal Appeals agreed with the state habeas trial court's findings and conclusions.  The state court finding is presumed correct absent "clear and convincing evidence" to the contrary.  *See* 28 U.S.C. § 2254(e)(1).

Petitioner has failed to submit any substantive evidence to contradict the state courts' factual finding that no partnership between counsel existed at the time defense counsel represented petitioner, or the state courts' conclusion that defense counsel's performance was not deficient.  Petitioner has failed to show the state courts' decision involved an unreasonable application of federal law, or was based on an unreasonable determination of the facts.  This claim should be DENIED.

### 2. Rebuttal Evidence

Petitioner argues defense counsel was deficient because he failed to introduce evidence which would have rebutted a prosecution witness's testimony.  Specifically, petitioner contends counsel should have attempted to introduce into evidence petitioner's airline "Passenger Ticket and Baggage Check," reflecting petitioner arrived in Amarillo, Texas on January 31, 2008, to

rebut Eslin's testimony that he had known petitioner and had been buying drugs from him for 3-6 months.  Petitioner concludes counsel's failure to introduce the airline ticket was deficient and prejudiced petitioner.

As discussed above, Eslin testified he had met petitioner 5-6 weeks prior to his arrest, not 3-6 months prior as petitioner claims.  Consequently, the airline ticket was only relevant if it could rebut Eslin's testimony that he had known petitioner 5-6 weeks prior to February 29, 2008, the date of his arrest.  Petitioner's ticket reflects a January 31, 2008 arrival date into the Amarillo area demonstrating he had been in Amarillo for 29 days, or 4 weeks, prior to his arrest.  The most that could be shown was that Eslin's testimony that he had known petitioner 5-6 weeks was not entirely correct.  The difference between Eslin's time estimate and the arrival date shown by the airline ticket is not critical.

Moreover, as noted by defense counsel in his affidavit, testimony by a police officer had already established petitioner's passport reflected entry to Qatar on January 5, 2008 and January 30, 2008, demonstrating petitioner was out of the United States prior to January 31, 2008. Further, Meek had testified petitioner had only been staying at the house on Amherst for about a month, and Baca had testified petitioner had only lived at the house for about two (2) weeks. Admission of the airline ticket would have been cumulative evidence that petitioner had been in the United States for a shorter period of time than estimated by Eslin.

The Court notes that without either petitioner taking the stand, or a records custodian or designated representative from the airline being called to lay the predicate for admission of the airline ticket, the ticket was inadmissible as hearsay.  In any event, the ticket itself was cumulative evidence.  The state habeas trial court agreed the evidence was cumulative and, under the existing record, was inadmissible, and determined defense counsel was not "deficient in any way."

Petitioner has failed to show the state courts' decision involved an unreasonable application of federal law, or was based on an unreasonable determination of the facts.  Petitioner's claim should be DENIED.

### 3.  Instructed Verdict

Petitioner argues counsel was deficient because he failed to request a directed verdict on the basis that the prosecution's only evidence of petitioner's guilt was uncorroborated accomplice testimony in violation of article 38.14 of the Texas Code of Criminal Procedure.  The state habeas trial court found:

> Given the overwhelming evidence of illegal drugs discovered by law enforcement separate and apart from the accomplice testimony, an instructed verdict would have been denied by this Court.

Based on the trial court's finding as to the strength of the case, that court also concluded petitioner's trial attorney was not "deficient in any way," which included failing to request a directed verdict.  The Texas Court of Criminal Appeals agreed.  Petitioner has simply reasserted his ground and has failed to show the state courts' decision involved an unreasonable application of federal law, or was based on an unreasonable determination of the facts.  Petitioner's claim should be DENIED.

### 4.  Motion for New Trial - *Ex Parte* Communication

Petitioner argues counsel was deficient because he failed to file a motion for new trial based on *ex parte* communications with the jury.  Petitioner contends "ex-prosecutor Bruce Roberson" met with the jury and influenced them to convict petitioner."  Based on the affidavits of Bruce Roberson and David Scott, the state habeas court found there was "no evidence of any outside party having *ex parte* communications with the jurors during trial."  Petitioner has not

rebutted this factual finding with clear and convincing evidence demonstrating an *ex parte* communication did, in fact, occur.  The state habeas court found defense counsel was not made aware of any alleged *ex parte* communications with the jurors during trial.  Again, petitioner has not rebutted this finding with clear and convincing evidence demonstrating defense counsel was aware of an improper communication with the jurors during trial.  Petitioner has failed to show the state court's decision on this issue involved an unreasonable application of federal law, or was based on an unreasonable determination of the facts.  Counsel was not deficient for failing to file a motion for new trial based on a communication the evidence shows did not occur.  This ground should be DENIED.

### 5.  Illegal Enhancement/ Erroneous Instruction

Petitioner argues counsel was deficient because he failed to object at sentencing to the inclusion of the erroneous 5-year enhancement and the resultant 20-year minimum sentence jury instruction.  Based on both the affidavits of prosecutor Scott and defense attorney Holmes, it is clear neither counsel were aware of the error at the time of trial.  However, after discovering the error, the trial court reformed the judgment to reflect a 15-year sentence, the minimum sentence petitioner could have received from the jury.  Assuming, for purposes of argument, that defense counsel was deficient for failing to discover the error prior to sentencing and for failing to object to the inclusion of the 5-year enhancement, petitioner cannot show he was prejudiced.  While petitioner did initially receive a sentence greater than allowed, the erroneous enhancement was removed two (2) months after the first Judgment was entered and petitioner was sentenced to the *minimum* sentence he could have received from the jury.  Consequently, petitioner cannot show he was harmed by counsel's failure to timely object to the inclusion of the erroneous drug free zone

enhancement.

Additionally, the state courts' determined petitioner was not denied effective assistance of counsel.  Petitioner has not shown the state courts' adjudication was contrary to involved an unreasonable application of federal law, or was based on an unreasonable determination of the facts.  This ground should be DENIED.

### 6.  Advice to Waive Appeal

On the day petitioner was originally sentenced, May 27, 2009, he filed a motion for new trial, a motion in arrest of judgment, and a notice of appeal.  On July 12, 2009, co-defense counsel Brancheau corresponded with petitioner advising he was working on petitioner's appeal, that the "appeal [was] going well," and that he had just received the record so that he could "start the real nuts and bolts work on [petitioner's] appeal."  SHCR at 62.  Co-defense counsel indicated possible grounds of error would be that "the law behind the probable cause affidavit produced by the arresting officer wasn't correctly applied by the trial court," "that the change of venue denial was improper," and that there was "improper testimony or evidence admissions at trial."  Brancheau also referenced the possibility of a PDR if petitioner's appeal was denied, and advised he would attempt "to get Eslin to recant his testimony" in an effort to reduce petitioner's offense to possession and obtain a sentence reduction.  On July 18, 2009, co-defense counsel informed petitioner of an offer from the prosecutor to drop the drug free zone finding and reduce petitioner's sentence to 15 years, but also advised petitioner he would have to "drop" his appeal to receive the "deal."

Petitioner contends defense counsel Holmes subsequently told him the state would "drop the drug free zone" if petitioner would forgo his appeal, and advised petitioner "it was a good

offer since he could find no good claims for the direct appeal anyway."  SHCR at 54.  By this ground, petitioner argues defense counsel's advice to waive his appeal was deficient.  Petitioner maintains defense counsel did not want to raise grounds of his own ineffectiveness on appeal, and thus gave petitioner "bad advice to simply drop his direct appeal in order to bury all the grounds that should have been raised on the appeal."

In his affidavit, defense counsel Holmes averred he "proposed" petitioner waive his motion for new trial and appeal in exchange for the judgment being reformed and a sentence of 15 years being assessed.  Holmes averred he  "discussed all the options" with petitioner, including the motion for new trial and appealing the case, as well as the various pros and cons of each option, and that at a hearing, petitioner agreed, in open court to waive his motion for new trial and appeal, and agreed to the minimum 15-year sentence.  SHCR at 11.

There is no support for petitioner's argument that Holmes recommended the agreement to insulate his trial performance from review.  Rarely are ineffective assistance of counsel claims considered on direct appeal due to the absence of a record supporting such claims.  *See Thompson v. State*, 9 S.W.3d 808, 813 (Tex.Crim.App. 1999).  Here, the ineffective assistance of counsel claims were ultimately raised, as is the preferred procedure, in state habeas corpus proceedings, and were considered by both the state trial court and the Texas Court of Criminal Appeals.  To the extent petitioner complains this specific improper motive existed and rendered defense counsel's advice to accept the deal with the State deficient, the claim fails.

Petitioner also appears to claim defense counsel's advice to waive his appeal and motion for new trial in exchange for the sentence reformation was deficient because it was unnecessary to forego any rights to receive the sentence reformation.  Namely, petitioner argues the enhancement was improper and would have had to be removed without any concession of rights on his part.

This is petitioner's better argument and petitioner is correct to the extent that the enhancement and the drug free zone finding would have had to be removed through some proceeding, whether through entry of a reformed judgment by the trial court as a result of an appropriate motion filed by either or both of the parties, or after a successful appeal.  However, the entry of a 15-year sentence would not necessarily have been required under either method.  The 20-year sentence was still within the appropriate sentencing range (15-99 years or life) regardless of the trial court's erroneous instruction as to the minimum sentence.  Upon a successful appeal of this issue, a 15-year sentence would not automatically have been rendered, rather, the case could have been remanded for a new punishment hearing, thereby subjecting petitioner to a sentence of 15-99 years, or life since the jury, rather than the trial court, assessed the sentence.  In exchange for foregoing his appeal and proceeding instead with a reformation of the judgment, petitioner received the guaranteed benefit of a 5-year sentence reduction, to wit: a 15-year sentence, the minimum sentence he could receive at a new punishment hearing.  Consequently, the waiver of his right to appeal was necessary to secure a guarantee of a 15-year sentence, even if not to guarantee the removal of the drug free zone finding.  Defense counsel's advice to accept the agreement appears to have been a strategic decision and was not deficient.

Petitioner also appears to argue, however, that if he had not been advised to waive his appeal and the appeal had proceeded, he would have been successful in not only having the drug free zone removed, but having his conviction overturned.  The only indication of what grounds were to be raised on appeal is from co-defense counsel Brancheau's letter, and petitioner has made no showing that those grounds would have been successful on appeal.  Consequently, even if petitioner could show counsel was deficient in advising petitioner to waive his appeal, petitioner has not shown he was prejudiced.  This ground should be DENIED.

7.  Motion for New Trial - Qusini's Purported Admission of Ownership

Petitioner also argues counsel was deficient because he failed to file a motion for new trial based on a purported admission by Qusini at her guilty plea hearing on July 29, 2009, approximately 2 months after petitioner's original sentence and a day after the entry of his waivers and reformed sentence.  Petitioner contends Qusini admitted, either in court documents or at the guilty plea hearing, that "she was the actual owner and possessor of all the drugs [petitioner] had been convicted of."

Again noting petitioner had waived his appeal and motion for new trial in exchange for the guaranteed sentence reduction prior to Qusini's guilty plea, it is unclear how defense counsel could have been deficient for failing to file a motion for new trial in direct disregard of petitioner's waivers.  It is also unclear how Qusini's entry of a guilty plea for the same offense with which petitioner was charged would have been an adequate basis for a motion for new trial.  There is no evidence before this court that Qusini was in exclusive possession of all the drugs, nor is there any evidence Qusini exonerated petitioner.  Even if she did, any such exoneration would be suspect because Qusini was not present at the time of the drug delivery to Eslin.  Vol. III at 41, 61, 63, 65-66, 132.  Petitioner has not demonstrated defense counsel was deficient or that petitioner was prejudiced by counsel's actions under this claim.  This ground should be DENIED.

H.  Presentence Jail Time Credits

Petitioner contends he is being denied presentence jail time credits toward his sentence. Pursuant to the original Judgment, petitioner's 20-year sentence was credited with the time he was in custody prior to trial, May 20, 2008, through the date of the Judgment, May 27, 2009.  When petitioner's sentence was reformed and a new Judgment entered on July 28, 2009, the trial court

failed to modify the time credited to the date of the new Judgment, *i.e.*, again crediting petitioner with the time from May 20, 2008 to May 27, 2009 rather than from May 20, 2008 to July 28, 2009. It is not clear whether such failure denied petitioner the time he was in custody from the date of the original judgment until the entry of the new judgment, or whether petitioner actually received credit for that time since he was in TDCJ-CID custody from the date of the May 27, 2009 judgment until July 28, 2009. In an Order Nunc Pro Tunc entered March 25, 2011, the trial court awarded petitioner additional time credit from February 29, 2008 to March 2, 2008 (3 days), but again only credited petitioner time from May 20, 2008 to May 27, 2009, the date of the original judgment, rather than to July 28, 2009, the date of the reformed judgment. This order of the trial court changed petitioner's sentence begin date to July 19, 2008 from the original begin date of May 20, 2008 and did not credit petitioner with the time he was in custody between the entry of the first and second judgments (May 27, 2009 to July 28, 2009). Based on the affidavit from TDCJ-CID attached to respondent's answer, petitioner has been awarded all presentence jail time credits awarded by the state trial court. However, it is possible the state trial court's reformed judgment erroneously did not credit petitioner with time from May 20, 2008 to July 28, 2009.

Even if petitioner did not receive the appropriate presentence time credits, this Court is unable to award petitioner the relief he seeks in his federal habeas corpus proceeding. First, there is no absolute constitutional right to presentence detention time credit and petitioner has not demonstrated he is otherwise entitled to such credits. *See Jackson v. State of Alabama*, 530 F.2d 1231, 1237 (5th Cir. 1976) (when a defendant cannot make bail due to indigency and receives the statutory maximum sentence, the failure to award presentence detention time credits results in the defendant receiving a sentence beyond the maximum sentence). That is not the case with regard to petitioner MOHSEN. Consequently, petitioner's claim is not cognizable on a federal writ of

habeas corpus.  Second, petitioner's claim was not properly exhausted and is now procedurally barred.  Petitioner's motion for judgment *nunc pro tunc* was the appropriate remedy for seeking his presentence jail time credits.  *See Ex parte Ybarra*, 149 S.W.3d 147, 148 (Tex.Crim.App. 2004) (per curiam).[7]  However, when the trial court failed to grant the appropriate relief, petitioner should have appealed the state trial court's order to the appropriate state appellate court.  *See Ex parte Pederson*, 2005 WL 3019017 at 1 (Tex.Crim.App. Nov. 9, 2005) (unpublished opinion). Petitioner's time to appeal the Order Nunc Pro Tunc has long expired and petitioner is now prohibited from pursuing such an appeal.  Petitioner has failed to show good cause for failure to exhaust the claim through the available state court remedies and he is procedurally barred from raising such claim on federal habeas corpus.

## I.  <u>Wrongful Forfeiture</u>

Petitioner argues the State wrongfully forfeited $4,800.00 seized from petitioner and seeks the return of said monies.  This claim is improper in a habeas corpus proceeding.  Title 28 U.S.C. § 2254 actions challenge the fact or duration of a petitioner's confinement.  Petitioner's ground should be DENIED.

## IV.
## <u>RECOMMENDATION</u>

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the petition for a writ of habeas corpus filed by petitioner ROCKY MOHAMMAD MOHSEN be DENIED.

---

[7]The trial court is required to grant a defendant presentence jail time credit when sentence is pronounced.  Tex. Code Crim. Proc. art. 42.03 § 2(a) (West  2009); Tex. R. App. P. 23.2 (West 2009).  The trial court has the authority to correct the judgment to reflect the appropriate time credit by *nunc pro tunc* order.

V.

<u>INSTRUCTIONS FOR SERVICE</u>

The United States District Clerk is directed to send a copy of this Report and

Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this   5th   day of March 2014.


_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE


**\* <u>NOTICE OF RIGHT TO OBJECT</u> \***

Any party may object to these proposed findings, conclusions and recommendation.  In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).